Gina ROOP, Appellant

v.

The STATE of Texas, Appellee

NO. 03–13–00141–CR

Court of Appeals of Texas,
Austin.

Filed: February 17, 2016

Ray Bass, Georgetown, TX, for appellant.

Elizabeth S. Phillips, Assistant District Attorney, Angie Creasy, Assistant District Attorney, Austin, TX, for appellee.

Before Justices Puryear, Goodwin, and Field

## OPINION

Scott K. Field, Justice

Following the denial of her motion to suppress evidence, appellant Gina Roop

pleaded guilty to a charge of third-degree felony driving while intoxicated (DWI). *See* Tex. Penal Code § 49.04 (listing elements of DWI); *id.* § 49.09(b)(2) (providing that DWI is third-degree felony if defendant had two prior convictions for enumerated offenses). The trial court sentenced Roop to seven years' imprisonment probated for four years and imposed restitution and other requirements. In a single point of error, Roop contends that the trial court erred in denying her motion to suppress the results of analysis of Roop's blood specimen obtained without a warrant. We will reverse the trial court's judgment and remand the case for a new trial.

## BACKGROUND

The trial court referred this case to a magistrate, who held a hearing on Roop's motion to suppress. At the hearing, Roop called Officer Taber White of the Austin Police Department. Officer White testified to the following facts. Around 4:00 a.m. on the morning of August 7, 2011, he received a report that cars were piling up near an intersection and blocking traffic. When Officer White arrived at the intersection, he saw an ambulance and a couple of cars that appeared to have been in a collision. Officer White determined that Roop had been driving the car that had rear-ended another vehicle. Roop told Officer White that "she was following a little bit too closely and whenever the car hit its brakes she ran into the back of the vehicle." Roop also said "that whenever she had hit the other car she looked up and the light was red." Officer White noticed that Roop "had red, glassy, watery eyes and that she exhibited an odor of alcohol coming from her person." He characterized the odor of alcohol as "[s]trong." Roop told Officer White "that she had a couple of drinks." In addition, Roop "had a little bit of a sway whenever she walked."

When Officer White advised Roop that he was going to perform the horizontal gaze nystagmus test, Roop initially refused to participate. However, when Officer White began to administer the test, Roop "followed the pen with her eyes." Officer White observed all six "clues" indicating that Roop was intoxicated. Roop refused to participate in two additional field sobriety tests. In addition, Officer White was informed that someone was transported from the scene of the accident to a hospital for treatment. Officer White then placed Roop under arrest at around 4:25.

After Roop had been placed under arrest, she said that she needed to use the restroom. Officer White stopped to allow Roop to use the restroom, and this took "just a few minutes." Officer White then drove Roop to the Travis County jail, which was "possibly a seven- to eight-minute drive." Once at the jail, Officer White ordered a phlebotomist to draw Roop's blood without her consent. This order was given at 5:09. After Roop's blood was drawn, Officer White learned that Roop had two prior DWI convictions. An analysis of Roop's blood revealed an alcohol concentration of .276.

Officer White testified that he did not attempt to get a warrant to collect Roop's blood. According to Officer White, "The procedure that we've been told is, in the event that someone is injured and transported from a—from the scene of a collision, and there's a DWI arrest, the person that was arrested is eligible for a mandatory blood draw." Officer White agreed that he was relying on "the mandatory blood draw statute" when he ordered Roop's blood to be drawn without a warrant. *See* Tex. Transp. Code § 724.012(b)(1) ("A peace officer shall require the taking of a specimen of the person's breath or blood" if person is arrested for DWI and refuses to submit voluntarily to taking of specimen

if "an individual other than the person has suffered serious bodily injury" or "an individual other than the person has suffered bodily injury and been transported to a hospital or other medical facility for medical treatment."). Officer White acknowledged that there is a magistrate "on duty 24 hours a day" at the municipal court building, which was about two-and-a-half miles from the scene of the accident and was a "fairly quick drive" away. However, Officer White also testified that he did not know whether a magistrate was present and available that morning. Officer White further agreed that he could have found out "[f]airly quickly" whether there was a detective on duty who could have assisted him in preparing a warrant application.

Following the hearing, the magistrate issued findings and recommendations. The magistrate discussed case law and noted "the presence of 24 hour magistration, the advances in blood testing science, and, the speed with which search warrant applications can be processed in the present day." The magistrate also stated that "there was a magistrate available" in this case and that "the officer made no effort at all to try to obtain a search warrant, relying instead, pursuant to APD policy, upon the provisions of the Transportation Code." The magistrate concluded the following:

> I find that no effort was made to obtain or even consider the possibility of obtaining a search warrant, and so, absent implied consent, the State has failed to show by clear and convincing evidence an exception to the warrant requirement. In regard to the implied consent issue, I recommend the Court find that the State does not have an interest in prosecuting DWIs which would override

the constitutional requirement for a search warrant. I recommend the Motion to Suppress be granted.

The district court adopted the magistrate's findings of fact but did not adopt "the conclusion of law that the Texas implied consent law does not provide a basis for dispensing with the requirement for a search warrant under the facts of this case." The court denied Roop's motion to suppress. Roop later pleaded guilty to the offense, and this appeal follows.[1]

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress for abuse of discretion, using a bifurcated standard. *Goodwin v. State,* 376 S.W.3d 259, 266 (Tex.App.–Austin 2012, pet. ref'd). In doing so, we view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State,* 414 S.W.3d 184, 192 (Tex.Crim.App.2013). When the trial court makes express findings of historical fact, as it did here, we afford almost total deference to those findings as long as they are supported by the record, and we also view the findings in the light most favorable to the trial court's ruling. *State v. Granville,* 423 S.W.3d 399, 404 (Tex.Crim.App.2014). In addition, we give almost total deference to rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an assessment of credibility and demeanor of witnesses. *Arguellez v. State,* 409 S.W.3d 657, 662 (Tex.Crim.App.2013). We review de novo pure questions of law and mixed questions of law and fact that do not depend on evaluating credibility and demeanor. *Martinez v. State,* 348 S.W.3d 919, 923 (Tex.Crim.App.2011). We review de novo the legal question of whether exi-

---

1. Although she pleaded guilty, Roop specifically reserved her right to appeal the trial court's denial of her motion to suppress, and the court certified that she had a right to appeal this issue. *See* Tex. R. App. P. 25.2(a)(2).

gent circumstances existed that justified a warrantless arrest. *See Valtierra v. State,* 310 S.W.3d 442, 447 (Tex.Crim.App.2010) ("[W]e review a trial court's application of the law of search and seizure to the facts *de novo.*"); *Evans v. State,* No. 14–13–00642–CR, 2015 WL 545702, at *6 (Tex. App.–Houston [14th Dist.] Feb. 10, 2015, pet. filed) (mem. op., not designated for publication) ("Although all findings of historical fact supported by the record must be implied in favor of the trial court's ruling that the blood draw should not be suppressed, whether those facts meet the legal standard of exigent circumstances is a legal question that we review de novo.").

## DISCUSSION

### Applicable Law

In her sole point of error, Roop contends that the involuntary extraction of her blood violated the Fourth Amendment.[2]

■ The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness." *State v. Villarreal,* 475 S.W.3d 784, 795 (Tex.Crim.App.2014) (citing *Riley v. California,* —— U.S. ——, 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014)). The Supreme Court has held that a search is reasonable only if it is conducted pursuant to a warrant or if it falls within a recognized exception to the warrant requirement. *See Missouri v. McNeely,* —— U.S. ——, 133 S.Ct. 1552, 1558, 185 L.Ed.2d 696 (2013) ("Our cases have held that a warrantless search of the person is reasonable only if it falls

within a recognized exception."). The drawing of a person's blood is a search under the Fourth Amendment. *See Schmerber v. California,* 384 U.S. 757, 769, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (describing blood draws as "searches involving intrusions beyond the body's surface"); *State v. Webre,* 347 S.W.3d 381, 385 (Tex. App.–Austin 2011, no pet.). Indeed, as the Supreme Court has recognized, "[s]uch an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy.'" *McNeely,* 133 S.Ct. at 1558 (quoting *Winston v. Lee,* 470 U.S. 753, 760, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985)).

■ If a defendant seeks to suppress evidence on the ground that it was collected in violation of the Fourth Amendment, the defendant bears an initial burden to overcome the presumption of proper police conduct. *See Amador v. State,* 221 S.W.3d 666, 672 (Tex.Crim.App.2007); *Martinez v. State,* 220 S.W.3d 183, 186 (Tex.App.–Austin 2007, no pet.). If the defendant meets this burden by establishing that the search or seizure occurred without a warrant, the burden shifts to the State to prove that the search or seizure was reasonable under the totality of the circumstances. *See Amador,* 221 S.W.3d at 672–73.

■ One exception to the warrant requirement "applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *McNeely,* 133 S.Ct. at 1558 (internal quotation marks omitted). "[T]he need to prevent the imminent destruction of evidence has long been recognized as a sufficient justification for a warrantless search." *Kentucky v. King,* 563

---

2. Roop's motion to suppress also argued that the blood draw violated the Texas Transportation Code. However, Roop has not brought this argument before us on appeal, and we will not consider it. *See* Tex. R. App. P. 38.1(f).

U.S. 452, 460, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011) (internal quotation marks omitted). Texas courts apply an objective standard in determining whether an officer reasonably relied on exigent circumstances in making a warrantless search based on the facts and circumstances known to the officer at the time of the search. *See Colburn v. State*, 966 S.W.2d 511, 519 (Tex. Crim.App.1998); *Evans*, 2015 WL 545702, at *5; *Stone v. State*, 279 S.W.3d 688, 692 (Tex.App.—Amarillo 2006, pet. ref'd).

The Supreme Court has explained the exigency exception to the warrant requirement in drunk-driving cases. In *Schmerber v. California*, the Supreme Court held that the warrantless collection of blood from a DWI suspect did not violate the Fourth Amendment because the officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." *Schmerber*, 384 U.S. at 770, 86 S.Ct. 1826 (internal quotation marks omitted). The Court explained its decision as follows:

> We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

*Id.* at 770–71, 86 S.Ct. 1826.

In *Missouri v. McNeely*, the Supreme Court revisited *Schmerber* and considered "whether the natural metabolization of alcohol in the bloodstream presents a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." *McNeely*, 133 S.Ct. at 1556. The Court rejected such a per se rule and explained that "the reasonableness of a warrantless search under the exigency exception to the warrant requirement must be evaluated based on the totality of the circumstances." *Id.* at 1560. The Court recognized that, in the years since *Schmerber*, advances in technology and the streamlining of the warrant process "allow for the more expeditious processing of warrant applications, particularly in contexts like drunk-driving investigations." *Id.* at 1561. Although the Court noted that "the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case," *id.* at 1563, it concluded that "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id.* at 1561.

Against this backdrop of Supreme Court authority, the Texas Court of Criminal Appeals recently addressed warrantless blood draws in *State v. Villarreal*. In that case, the State argued that the implied consent and mandatory blood draw provisions of the Texas Transportation Code "form a valid alternative to the Fourth Amendment warrant requirement." *Villarreal*, 475 S.W.3d at 793; *see* Tex. Transp. Code § 724.011 (providing that person arrested under certain circumstances is deemed to have consented to submit to collection of breath or blood specimen); *id.* § 724.012(b) (mandating that officer collect breath or blood specimen under certain conditions). The court rejected this argument and concluded that "the warrantless, nonconsensual testing of a DWI suspect's

blood cannot be justified as a reasonable intrusion under any of the State's proffered exceptions to the warrant requirement." *Villarreal*, 475 S.W.3d at 808. The court also held that a general Fourth Amendment balancing test was inappropriate in the context of a warrantless blood draw and that, even if such a test were performed, the court "would conclude that, on balance, a DWI suspect's privacy interest outweighs the State's interest in preventing drunk driving through warrantless searches." *Id.* at 811. The court in *Villarreal* did not address the exigent circumstances exception to the warrant requirement.[3]

With this guidance from the Supreme Court and the court of criminal appeals in mind, we now turn to the case before us.

### Application

■ It is undisputed that Roop's blood was collected without a warrant. Therefore, the State bore the burden of proving that the blood draw was reasonable under the totality of the circumstances. *See Amador*, 221 S.W.3d at 672–73. On appeal, the State makes several arguments in support of the constitutionality of the blood draw.[4] First, the State argues that, under Texas's implied consent and mandatory blood draw statutes, Roop has consented to have her blood collected under certain circumstances. As discussed above, this argument was rejected by the court of criminal appeals, and we will not discuss it further. *See Villarreal*, 475 S.W.3d at 800 (holding that "implied consent that has been withdrawn or revoked by a suspect cannot serve as a substitute

for the free and voluntary consent that the Fourth Amendment requires").

■ Second, the State argues that "[t]he totality of the circumstances in the present case constitute exigency sufficient to justify the warrantless blood draw." The State points out that, like *Schmerber*, this case involves a traffic accident: "Here, there was a car crash involving multiple occupants and witnesses, two individuals were transported to a medical facility for treatment, and more than an hour elapsed from the time Officer White arrived on the scene to when he arrived with the appellant at the Travis County Jail." However, in light of *McNeely*, we conclude that this case is distinguishable from *Schmerber*. Here, although Roop was involved in a traffic accident, nothing in the record suggests that this fact significantly delayed the collection of Roop's blood. Officer White testified that he came into contact with Roop at about 4:00 a.m., placed Roop under arrest at 4:25, and ordered her blood to be drawn at 5:09. The stop for Roop to use the restroom took just a few minutes, and the drive to the jail took only seven to eight minutes. We are not persuaded that the mere existence of a traffic accident constitutes a per se exigency justifying a warrantless blood draw. *See Evans*, 2015 WL 545702, at *6 (holding that accident investigation, by itself, is not exigent circumstance).

In addition, "[a]lthough the findings of fact state that it is within judicial knowledge that the text for a search warrant can be produced in a manner of minutes," the State contends that "the findings of fact also indicate that the speed with which

---

**3.** The court of criminal appeals initially granted the State's motion for rehearing in *Villarreal*. However, on December 16, 2015, the court issued a per curiam opinion stating that the motion was improvidently granted and denying the motion for rehearing.

**4.** We address these arguments in an order different from that presented in the State's brief.

search warrant applications can be produced and transmitted was not extensively explored in the hearing." According to the State, the record does not indicate how long it would have taken for Officer White to secure a warrant. However, the burden was not on Roop to show that a warrant could have been obtained quickly—the burden was on the State to prove that Officer White could have reasonably believed that obtaining a warrant would cause a significant delay that would endanger the evidence of Roop's blood alcohol content. *See Amador*, 221 S.W.3d at 672–73. Based on the record before us, we cannot conclude that the State met that burden. Indeed, Officer White explicitly testified that he made no attempt to obtain a warrant because he was relying on the mandatory blood draw statute. Officer White agreed that he had "been instructed that in these kinds of particular situations" he should "go straight for the mandatory blood draw." He also testified that it was his understanding that a magistrate was available at all times in a nearby court building, that he could have quickly checked to see whether someone was available to assist him in the warrant process, and that he had access to email, radio, and a cell phone in his vehicle. Officer White never testified that he believed obtaining a warrant would be a lengthy or onerous process, and nothing in the record supports that conclusion.

▮ Finally, the State argues that the results of Roop's blood analysis should not be suppressed even if the blood draw violated the Fourth Amendment. The State relies on a good faith exception to the federal exclusionary rule. Under this exception, if an officer reasonably relies on a statute in making an unconstitutional search, the results of that search will not be suppressed. *See Illinois v. Krull*, 480 U.S. 340, 349–50, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). The State argues that, because Officer White relied on Texas's implied consent and mandatory blood draw statutes, the results of Roop's blood draw should not be suppressed. We disagree because "*McNeely* did not set out a new constitutional rule, but rather clarified *Schmerber* and reaffirmed the Supreme Court's prior rulings regarding the admissibility of blood evidence acquired without a warrant." *Howard v. State*, No. 01–14–00112–CR, 2015 WL 4497431, at *4 (Tex. App.–Houston [1st Dist.] July 23, 2015, pet. ref'd) (mem. op., not designated for publication). Moreover, as one of our sister courts has recognized, an officer cannot rely in good faith on Texas's implied consent or mandatory blood draw statute to justify a warrantless blood draw because, "[a]lthough the statute states an officer shall take a blood draw if an individual suffered serious bodily injury as a result of the DWI, it does not *mandate* that he do so without a warrant." *Huff v. State*, 467 S.W.3d 11, 34 (Tex.App.–San Antonio 2015, no pet.). Therefore, we cannot conclude that Officer White "acted in good faith when he failed to obtain a warrant based upon a statute that does not dispense with the warrant requirement." *Id.*

▮ In addition, even if the federal exclusionary rule would not prevent the admission of Roop's blood draw results, these results should be suppressed under Texas's statutory exclusionary rule, which does not have an exception for good faith reliance on a statute. *See* Tex. Code Crim. Proc. art. 38.23(a) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."). The only exception to Texas's exclusionary rule is "that the evidence was

obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause," but Officer White could not have relied on a warrant because he did not obtain one. *See id.* art. 38.23(b); *State v. Munoz,* 474 S.W.3d 8, 16 (Tex.App.–El Paso 2015, pet. filed) (collecting cases); *State v. Tercero,* 467 S.W.3d 1, 10 (Tex.App.–Houston [1st Dist.] 2015, pet. ref'd) (holding that good faith exception does not apply because it is inconsistent with text of article 38.23).[5]

■■ Having concluded that the collection of Roop's blood violated the Fourth Amendment, we must next perform a harmless error review and reverse the trial court's judgment unless we determine beyond a reasonable doubt that the error did not contribute to Roop's conviction or punishment. *See* Tex. R. App. P. 44.2(a). Here, the analysis of Roop's blood specimen revealed a blood alcohol concentration well above the legal limit. Roop pleaded guilty after the trial court refused to suppress this evidence. Although the record does contain Officer White's testimony that Roop exhibited signs of intoxication and failed the horizontal gaze nystagmus test, we cannot conclude beyond a reasonable doubt that the trial court's error did not contribute to Roop's decision to plead guilty. *See Moser v. State,* No. 04–13–00826–CR, 2015 WL 1938865, at *4 (Tex. App.–San Antonio Apr. 29, 2015, pet. granted) (mem. op., not designated for publication), *vacated on other grounds by* PD–0662–15, 2016 WL 325435 (Tex.Crim.

App.2016) (per curiam) ("We cannot determine beyond a reasonable doubt that the trial court's failure to grant his motions to suppress the blood test results did not contribute in some measure to the State's leverage in obtaining his guilty plea and thus to his conviction.").

In summary, we conclude that the collection of Roop's blood specimen without her consent and without a warrant violated the Fourth Amendment. We further conclude that the trial court abused its discretion in denying Roop's motion to suppress, and we cannot determine beyond a reasonable doubt that this error did not harm Roop. Accordingly, we sustain Roop's point of error.

## CONCLUSION

Having sustained Roop's point of error, we reverse the trial court's judgment and remand this case for a new trial consistent with this opinion.

---

5. The State argues in its brief that Roop "has waived any argument that the evidence, while not subject to the federal exclusionary rule, should be excluded under [article 38.23]." We disagree. Nothing in the text of article 38.23 suggests that this provision must be specifically cited to in order for evidence to be suppressed under Texas's exclusionary rule, and the State has not cited any authority support-

ing such a theory. Moreover, in her motion to suppress, Roop specifically invoked article 38.23, stating, "Pursuant to Article 38.23, Texas Code of Criminal Procedure Defendant, [sic] respectfully moves the Court for an order suppressing the results of the analysis of a blood specimen extracted from the defendant pursuant to [the mandatory blood draw statute]."