# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00661-CR

**The State of Texas, Appellant**

**v.**

**Travis Lee Wickson, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 424TH JUDICIAL DISTRICT
### NO. 42899, HONORABLE EVAN C. STUBBS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After being charged with driving while intoxicated with a child passenger, *see* Tex. Penal Code § 49.045, appellee Travis Lee Wickson moved to suppress the results of an alcohol breath test. The trial court granted the motion to suppress, and the State now appeals. Because we conclude that the trial court abused its discretion in concluding that Wickson's consent to the breath test was not voluntary, we will reverse the trial court's order and remand for further proceedings consistent with this opinion.

## BACKGROUND

The only evidence before the trial court when it ruled on Wickson's motion to suppress was the testimony of Texas Department of Public Safety Trooper Mason Wilhite and a visual and audio recording of Trooper Wilhite's encounter with Wickson. This evidence showed the following: Trooper Wilhite observed Wickson speeding and crossing over the white fog line

onto the improved shoulder.  When he ran Wickson's license plate in his in-car computer system, the system returned an alert.  Believing that this alert indicated that the vehicle was stolen, Trooper Wilhite pulled Wickson over and asked him to step out of his vehicle.  There were two children under the age of 15 in the vehicle with Wickson.

After further investigation, Trooper Wilhite learned that the vehicle was not stolen and that the alert instead indicated that Wickson was a registered sex offender.  As Trooper Wilhite was explaining the alert to Wickson, Trooper Wilhite noticed the odor of alcohol on Wickson's breath and other signs that Wickson was intoxicated.  Wickson admitted that he had been drinking, and Trooper Wilhite conducted a horizontal gaze nystagmus test.

Trooper Wilhite then asked Wickson if he would provide a breath sample into a portable breath tester and told Wickson that the results would not be admissible in court.  Wickson declined, and Trooper Wilhite conducted further standardized field sobriety tests.  According to Trooper Wilhite, Wickson exhibited signs of intoxication during these tests.  After the tests, Trooper Wilhite again asked Wickson to provide a breath sample, and Wickson again refused.  However, after Trooper Wilhite told Wickson, "You're looking like you're right there on the edge," Wickson provided a breath sample.  This sample registered a blood alcohol content of .130, and Trooper Wilhite placed Wickson under arrest for driving while intoxicated.

Trooper Wilhite read Wickson *Miranda* warnings as well as statutory warnings concerning the provision of a breath sample.  *See* Tex. Transp. Code § 724.015.  Trooper Wilhite then requested another sample of Wickson's breath, which he explained would be admissible in court.  Wickson declined, and Trooper Wilhite told him that because Wickson was driving while

intoxicated with child passengers, he was under arrest for a felony offense and Trooper Wilhite would obtain a "mandatory blood draw." Trooper Wilhite also stated that Wickson had "no choice in the matter." Wickson then agreed to provide a breath sample. Trooper Wilhite drove Wickson to the police station. During the drive, he and Wickson engaged in cordial conversation. Once at the station, Wickson provided two breath samples.

Wickson later moved to suppress any evidence concerning the breath test or its results, and the trial court granted his motion. In its findings of fact and conclusions of law, the court concluded that, "[f]ollowing the decision of the United States Supreme Court in *Missouri v. McNeely*, [133 S. Ct. 1552 (2013),] exigent circumstances or a warrant would be needed to legally draw the Defendant's blood without his voluntary consent." The court then concluded, as a matter of law, "that by unequivocally informing the Defendant that, based on his refusal to provide a voluntary specimen of his breath, the officer was going to conduct a mandatory blood draw, irrespective of whether the Defendant agreed or not, and with no intention of seeking a blood warrant first, the officer rendered the subsequent provision of a breath specimen involuntary." This appeal followed.

**STANDARD OF REVIEW**

We review a trial court's ruling on a motion to suppress for an abuse of discretion, using a bifurcated standard. *Goodwin v. State*, 376 S.W.3d 259, 266 (Tex. App.—Austin 2012, pet. ref'd). In doing so, we view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). When the trial court makes express findings of historical fact, as it did here, we afford almost total deference to those findings as long as they are supported by the record, and we also view the findings in the light most favorable to the

3

trial court's ruling. *State v. Granville*, 423 S.W.3d 399, 404 (Tex. Crim. App. 2014). In addition, we give almost total deference to rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an assessment of credibility and demeanor of witnesses. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). We review de novo pure questions of law and mixed questions of law and fact that do not depend on evaluating credibility and demeanor. *Fienen v. State*, 390 S.W.3d 328, 335 (Tex. Crim. App. 2012).

"A driver's consent to a blood or breath test must be free and voluntary, and it must not be the result of physical *or* psychological pressures brought to bear by law enforcement." *Id.* at 333 (citing *Meekins v. State*, 340 S.W.3d 454, 458–59 (Tex. Crim. App. 2011)). "The ultimate question is whether the person's will has been overborne and his capacity for self-determination critically impaired such that his consent to search must have been involuntary." *Id.* (internal quotation marks omitted); *see United States v. Watson*, 423 U.S. 411, 424 (1976). Whether consent was voluntary is a question of fact that must be analyzed based on the totality of the circumstances, and the State must prove voluntary consent by clear and convincing evidence. *See Fienen*, 390 S.W.3d at 333; *Meekins*, 340 S.W.3d at 460. We will uphold the court's finding unless it is clearly erroneous. *See Fienen*, 390 S.W.3d at 335; *Meekins*, 340 S.W.3d at 460.

**DISCUSSION**

In its findings of fact and conclusions of law, the trial court found that Wickson consented to the breath test only after Trooper Wilhite told Wickson that he was going to obtain a "mandatory blood draw" if Wickson did not provide a breath sample. Assuming that a "mandatory blood draw" would have been a *warrantless* blood draw, the trial court concluded that it would have

4

been illegal for Trooper Wilhite to obtain a warrantless blood draw absent exigent circumstances, citing *Missouri v. McNeely*. The court therefore determined that Trooper Wilhite had misinformed Wickson about the consequences of refusing to provide a breath sample and that this misinformation rendered Wickson's consent involuntary. In making this determination, the trial court relied on *Erdman v. State* for the proposition that a law enforcement official renders a suspect's consent to a breath test involuntary by incorrectly informing the suspect of the consequences of refusing to provide a breath sample. *See Erdman v. State*, 861 S.W.2d 890, 894 (Tex. Crim. App. 1993) ("[L]aw enforcement officials must take care to warn D.W.I. suspects correctly about the actual, direct, *statutory* consequences of refusal. Any other information conveyed to D.W.I. suspects may have the effect—either intended or unintended—of undermining their resolve and effectively coercing them to consent."), *overruled by Fienen*, 390 S.W.3d at 335.

However, the court of criminal appeals overruled *Erdman* in *Fienen* several years before Wickson was arrested. *See Fienen*, 390 S.W.3d at 335. In *Fienen*, the court of criminal appeals held that a trial court must consider the totality of the circumstances when determining whether a person's consent was voluntary. *See id.* ("No statement—whether it refers to the consequences of refusing a breath test, the consequences of passing or failing a breath test, or otherwise—should be analyzed in isolation because its impact can only be understood when the surrounding circumstances are accounted for."). Accordingly, under *Fienen*, even if Trooper Wilhite did misstate the consequences of Wickson's refusal to provide a breath sample, the trial court was required to consider this misstatement as part of the totality of the circumstances surrounding Wickson's consent and not as a factor that automatically renders consent involuntary, as the trial court apparently did by basing its conclusions of law on *Erdman*.

5

The trial court also based its conclusions of law on *McNeely*.[1] Specifically, the trial court concluded that, "[f]ollowing the decision of the United States Supreme Court in *Missouri v. McNeely*, exigent circumstances or a warrant would be needed to legally draw the Defendant's blood without his voluntary consent." The court further concluded that, in light of *McNeely*, Trooper Wilhite rendered Wickson's consent involuntary by stating that he would obtain a mandatory blood draw if Wickson refused to provide a breath sample. We conclude, however, that Trooper Wilhite did not misinform Wickson about the consequences of his refusal to provide a breath sample. Although Wickson was arrested after the United States Supreme Court issued its *McNeely* decision, *McNeely* held only that the natural metabolization of alcohol in the bloodstream does not present a per se exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing. *See McNeely*, 133 S. Ct. at 1556. Even after *McNeely*, Texas courts continued to debate whether the implied-consent and mandatory-blood-draw provisions of the Texas Transportation Code formed a valid alternative to the Fourth Amendment's warrant requirement. It was not until November 2014, months after Wickson was arrested, that the Texas Court of Criminal Appeals held that "a nonconsensual search of a DWI suspect's blood conducted pursuant to the mandatory-blood-draw and implied-consent provisions in the Transportation Code, when undertaken in the absence of a warrant or any applicable exception to the warrant requirement, violates the Fourth Amendment." *State v. Villarreal*, 475 S.W.3d 784, 815 (Tex. Crim. App. 2014);

---

[1] The trial court's determination that Wickson's consent was involuntary under its analysis of *Erdman* and *McNeely* is either a pure question of law or a mixed question of law and fact that does not depend upon the credibility and demeanor of witnesses. Either way, we review the trial court's application of these cases de novo. *See Fienen v. State*, 390 S.W.3d 328, 335 (Tex. Crim. App. 2012).

6

*see Roop v. State*, 484 S.W.3d 594, 599–600 (Tex. App.—Austin 2016, pet. filed) (discussing development of blood-draw case law, including *McNeely* and *Villarreal*).

In addition, in the recording of the encounter, Trooper Wilhite does not actually tell Wickson that he would collect a blood specimen *without a warrant*—he merely says that he would obtain a "mandatory blood draw." *See Roop*, 484 S.W.3d at 601 (noting that mandatory-blood-draw statute does not mandate that officer collect blood specimen without warrant); *Huff v. State*, 467 S.W.3d 11, 34 (Tex. App.—San Antonio 2015, pet. filed) ("Although the statute states an officer shall take a blood draw . . . it does not *mandate* that he do so without a warrant."). Nothing in the record indicates that Wickson understood Trooper Wilhite to mean that the trooper would not obtain a warrant before drawing his blood. Therefore, Trooper Wilhite's statement about the mandatory blood draw could not have rendered Wickson's consent involuntary.

We conclude that the trial court erred in basing its conclusions of law on a misinterpretation or misapplication of *Erdman* and *McNeely* to conclude that Wickson's consent was involuntary.

Wickson nevertheless argues that his consent to the breath test was not voluntary because "the encounter began with Wickson being confronted as a thief and a sex offender" and Wickson therefore "likely felt psychologically disadvantaged." Wickson also notes that he did not consent until Trooper Wilhite told him that he was "right there on the edge." However, Trooper Wilhite's testimony and the recording of the encounter demonstrate that at no time did Trooper Wilhite force Wickson to provide a breath sample. Trooper Wilhite conducted himself in a professional manner throughout the encounter, and he and Wickson engaged in small talk that was

7

cordial and even included moments of humor. Although Trooper Wilhite encouraged Wickson to provide a breath sample, he also consistently made it clear to Wickson that whether to provide a sample was ultimately Wickson's decision.[2] Wickson clearly understood his options because he refused to provide a breath sample on several occasions. In addition, when Wickson decided to provide a sample, Trooper Wilhite asked Wickson several times to confirm that Wickson really had changed his mind and was consenting to provide a sample. Moreover, the evidence showed that Wickson persistently consented to the second breath test even though he had ample time to withdraw his consent on the way to the station and while the testing device was being prepared.

Furthermore, nothing in the record indicates that Wickson's "will [was] overborne and his capacity for self-determination critically impaired" by being told that his blood would be drawn. *See Fienen*, 390 S.W.3d at 333. The record contains no evidence that Wickson was particularly troubled by the prospect of having his blood drawn or that he perceived Trooper Wilhite's statement as a threat compelling him to provide a breath sample.[3] Rather, the record shows that, after being informed of the possibility of a mandatory blood draw, Wickson made an informed decision to provide a breath sample, a decision from which he never wavered while being transported to the jail.

---

[2] Although Trooper Wilhite once told Wickson that he had "no choice in the matter," it is clear from the context that Trooper Wilhite meant that Wickson had no choice but to have his blood drawn if he refused to provide a breath sample. Trooper Wilhite did not mean that Wickson had no choice of whether to provide a breath sample.

[3] We note that Wickson's reaction to the prospect of a blood draw was considerably more mild than that of the defendant in *Fienen*, who expressed that he was "deathly terrified of needles" and that it was against his religion to have his blood drawn. *See Fienen*, 390 S.W.3d at 330. Despite the distress articulated by the defendant in *Fienen*, the court of criminal appeals held that his eventual consent to provide a breath sample was voluntary. *See id.* at 336.

8

For these reasons, we conclude that, even when viewing the evidence in the light most favorable to the trial court's ruling, the State proved by clear and convincing evidence that Wickson voluntarily consented to providing a breath sample. Accordingly, we conclude that the trial court abused its discretion in granting Wickson's motion to suppress, and we sustain the State's appellate issue.

## CONCLUSION

We reverse the trial court's order granting Wickson's motion to suppress the breath-test evidence and remand the case to the trial court for further proceedings consistent with this opinion.

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin, and Field

Reversed and Remanded

Filed: June 7, 2016

Do Not Publish

9