# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00544-CR

**Miguel Radilla-Esquivel, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
### NO. D-1-DC-13-301688, HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Miguel Radilla-Esquivel was charged by indictment with four counts of aggravated sexual assault of a child, three counts of indecency with a child by contact, and three counts of indecency with a child by exposure. *See* Tex. Penal Code §§ 21.11, 22.021. A jury found him guilty of two counts of aggravated sexual assault of a child and all six counts of indecency with a child. After the jury returned the verdicts, the State waived the three counts of indecency with a child by exposure. The jury then assessed punishment at fifty years' imprisonment for each of the aggravated-sexual-assault convictions and twenty years' imprisonment for each of the convictions for indecency with a child by contact. *See id.* §§ 12.32, 12.33, 12.34, 21.11(d), 22.021(e). The trial court imposed the sentences and ordered that they run concurrently.

In thirteen issues on appeal, appellant raises sufficiency-of-the-evidence and double-jeopardy claims and challenges the trial court's rulings regarding the jury charge and jury argument. We will affirm the trial court's judgments of conviction.

**BACKGROUND**

The evidence shows that appellant lived with A.G. and her family at an apartment in Austin for about two years in 2006 and 2007.[1] A.G.'s father testified that his sister had been married to appellant's brother and that he became "good friends" with appellant and let him rent a room in the apartment. He testified that he trusted appellant at the time and sometimes asked him to babysit A.G. and her siblings. A.G. was approximately six and seven years old during that time frame.

In May 2013, A.G. made an outcry of sexual abuse to her father's girlfriend. She stated that appellant "put it in her" when he lived with her and her family several years earlier. Based on A.G.'s outcry, her father's girlfriend called the police, and A.G. was interviewed by a detective and a forensic interviewer and examined by a doctor. A.G. told the forensic interviewer that appellant penetrated her sexual organ and anus on more than one occasion. The detective interrogated appellant, who ultimately made certain admissions about physical contact he had with A.G. when he lived with her and her family.

Appellant was tried by a jury and convicted of two counts of aggravated sexual assault of a child and six counts of indecency with a child. After the State waived the three counts

---

[1] Because we must discuss the facts of this case in detail below in order to address the issues raised by appellant, we limit our recitation of the facts here.

of indecency with a child by exposure, the jury assessed punishment on the remaining convictions. The trial court then imposed sentence, and this appeal followed.

## DISCUSSION

Appellant raises thirteen issues on appeal, contending that there is insufficient evidence to support his convictions for indecency with a child by contact, that his convictions for indecency with a child by contact violate the constitutional prohibition on double jeopardy, that the trial court committed error in the jury charges during the guilt-innocence and punishment phases of trial, and that the trial court erred in sustaining the State's objections to certain arguments made by defense counsel during closing arguments. We will address all of the issues below.

### Sufficiency of the Evidence

In three issues, appellant asserts that the evidence is insufficient to support each of his three convictions for indecency with a child by contact. When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences that can be drawn from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). In our analysis, we assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We consider only whether the jury reached a rational decision. *See Isassi*, 330 S.W.3d at 638 ("Our role

on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally." (quoting *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009))).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *See Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge is one that 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id*. (quoting *Malik*, 953 S.W.2d at 240). The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the indictment. *See Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013).

The statute under which appellant was convicted on three counts of indecency with a child by contact states the following, in relevant part:

> (a) A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex, the person:
>
> > (1) engages in sexual contact with the child or causes the child to engage in sexual contact.
>
> . . . .
>
> (c) In this section, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:
>
> > (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or

4

(2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

Tex. Penal Code § 21.11.

The indictment in this case charged appellant with three counts of indecency with a child by contact, alleging that appellant intentionally and knowingly, with the intent to arouse and gratify his sexual desire, engaged in sexual contact with A.G. by (1) touching her genitals, (2) touching her anus, and (3) causing A.G. to touch his genitals.

A review of the evidence admitted at trial begins with A.G.'s father's former girlfriend, who was the first witness to testify about A.G.'s outcry of sexual abuse. She testified that she suspected A.G. had been abused based on certain behaviors exhibited by A.G. and because A.G. "got quiet and sad and didn't want to talk about it" when the former girlfriend told A.G. and her brothers that "nobody should ever touch them." The former girlfriend testified that when she raised the subject with A.G. again after the initial conversation, A.G. started shaking and crying and told her that appellant had "put it in her." She testified that A.G. continued crying for at least an hour after she initially spoke of the abuse.

The forensic interviewer who interviewed A.G. after A.G.'s outcry of abuse also testified about A.G.'s accounts of sexual abuse in the following exchanges:

Prosecutor:    And so did she tell you what happened first?

Interviewer:   What happened first during [the first] incident?

Prosecutor:    Yes.

5

Interviewer: First she said that they were in the living room playing and then he took her by the hand and led her to his bedroom.

Prosecutor: And then once he was in the bedroom, what did he do?

Interviewer: Once in the bedroom, he took off his clothes and took off her shorts and underwear, and that's when he put his thing inside her middle part and butt.

Prosecutor: Okay. Did she explain to you where she was when this actually happened to her?

Interviewer: She said she was lying down on the bed.

Prosecutor: And did she tell you how?

Interviewer: She said when he put his middle—his private thing, I'm sorry, in her middle part that she was on her back, and that when he put his private thing in her butt that she was on her stomach laying down on the bed.

Prosecutor: Did she tell you which happened first, her middle part or her butt?

Interviewer: I believe she said that her butt happened first.

Prosecutor: And so did she explain to you how it is that she got, I guess, from her back to her stomach?

Interviewer: She said that [appellant] moved her from her hips.

Prosecutor: Did she describe to you how she felt at the time?

Interviewer: What she said is that she felt like she couldn't move because it was hurting so much.

Prosecutor: And you explained that she told you this happened more than once?

Interviewer: Yes.

Prosecutor: And so the incident where she was telling you, when did she say that happened?

6

Interviewer:    The incident she told me about in detail, she said, was the first time, and she said it happened when she was six years old, I believe, and that it was before Christmastime.

Prosecutor:     Six years old before Christmastime?

Interviewer:    Yes.

Prosecutor:     And you said that was the first time?

Interviewer:    Correct.

Prosecutor:     And did you ask her to, I guess, tell you about the first time?

Interviewer:    Well, once she told me that there were—that there was more than one time, I asked her to go back and tell me about the first time. Once she told me all the details of the first time, I asked her to tell me about some of the other times as well.

Prosecutor:     Okay. And what did she tell you about the other times?

Interviewer:    What she told me was that the last time happened when she was six years old after Christmas and before spring break. Really all she told me about the other times is that they were the same as the first, that there was nothing different that happened during those other times.

Prosecutor:     And did y'all discuss any other times other than the first and the last time?

Interviewer:    I believe that she said there were times in between, but as far as detailed, the first time was really the one that she described in the most detail. The other times she really just described as not being any different from the first time.

The interviewer further testified about A.G.'s demeanor during the interview, explaining that A.G. "started to cry and it became difficult for her to continue talking" shortly after the interview began

7

and then "sniffled throughout the rest of it" after the interviewer helped calm her down and "sort of balled up the tissue that she had in her fist and just kind of wrung her hands throughout the interview."

A doctor who examined and interviewed A.G. after A.G.'s outcry also testified about A.G.'s account of the abuse in the following exchanges:

Prosecutor: [W]hat did [A.G.] tell you in that history?

Doctor: I interviewed [A.G.] alone. She told me she had come to see me because she was touched by, quote, "my dad's friend [appellant]," end quote. She said when she was around six years old [appellant] was living at her house and that on at least two or three occasions he was babysitting her while her father took her brothers somewhere. She said [appellant] touched her private parts in the front and the back with his private part on the inside.

. . . .

Prosecutor: And when she says that [appellant] touched her private parts in the front and the back with his private part on the inside, in your training and experience what does that—what did that mean to you when she said private parts?

Doctor: She was indicating—when she was talking about her own private parts, she was pointing with her hand to her vaginal area. And when she said her private parts in the back, she was pointing behind her. And when she was referring to his private part, she was referring to the penis.

Prosecutor: Okay. So just so I'm clear, the private part in front, that would be the female sexual organ, the vagina, and in the back would be the anus; is that correct?

Doctor: That's correct.

Prosecutor: And when she's referred to his private part, that would be the penis?

Doctor: That's correct.

8

Further, the detective assigned to the case interrogated appellant twice, and the videotaped interrogations and transcripts of the interrogations, during which appellant made certain admissions, were admitted into evidence at trial. During the second interrogation, appellant stated that he was lying on his bed one day when A.G. came into his room and sat on his penis. He stated that she was wearing "a pair of shorts" and that "she was moving." He said that he thought A.G. "saw her dad doing that and she wanted that too." He stated that the incident happened very fast and that he told her to "knock it off." He also spoke about another incident in which he stated that A.G. "got on all fours" and "came up close against [him] like this." He stated that she "was moving, sliding like this." He said that he told her once again to "knock it off." He further stated that "she was, the little lass, very—very horny."

The detective who interrogated appellant also testified about appellant's interrogation, including the physical gestures appellant made when he described contact with A.G. The detective testified about appellant's first admission of contact with A.G. in the following exchange:

Detective: He said, there was this one time she walked into my room and got on top of me on the bed. And so then I'm like, okay, so tell me about that situation.

Prosecutor: And did he proceed to tell you about that situation?

Detective: He did.

Prosecutor: And what did he say?

Detective: He said there was this one time when he was lying on his bed and [A.G.] walked into his room, got on top of him. Particularly he kept—he kept pointing. You know, he's like, she got on top, she sat on me, and he kept pointing.

 And I'm like, what are you talking about? Your stomach?

9

He's like, no, she got on top of me.

Are you talking about your stomach? I was trying to elicit from him what are you talking about. So he kept saying—he just kept pointing down to his penis, so eventually I said, she sat on your penis?

He's like, yeah.

Okay. So then what happened?

And he proceeded to—indicated that [A.G.] got on top of him, sat on his penis and was doing some motions that indicated to me that her vagina was rubbing up against his penis with their clothes on.

The detective further testified about appellant's second admission of contact with A.G. as follows:

Detective: Eventually he said, okay, there was this other time—I believe he said they were in the living room, if I can remember correctly—I can't remember—that—his words, something similar to she got on all fours right in front of me, and he indicated that he grabbed her by her hips and pulled her towards him to touch his penis as she was on all fours.

Prosecutor: You're illustrating with your hands. Are you saying, just so we're clear, that he used his hands to grab her by the hips?

Detective: Yes, that's what—that's how it came across to me when he indicated that, that he—like I say, I want to remember that he said they were in the living room and that she just got in front of him on all fours. I believe he said something to the effect, I think she got that from seeing her parents having sex or something.

Prosecutor: That's what he offered up as an explanation?

Detective: Yes. And then he says that he just basically grabbed her by the hips, pulled her towards him, making her buttocks touch his penis, and reiterated, but I never penetrated her.

A.G. also testified at trial. She testified that she was six years old when the abuse occurred. According to her testimony, her parents left her alone with appellant on one occasion. She

10

testified that appellant walked into the living room, where she was playing.  She then testified as follows in exchanges with the prosecutor:

Prosecutor:      What is the next thing that you do remember?

A.G.:      I remember him touching me.

Prosecutor:      You remember him touching you.  Do you remember where he touched you?

A.G.:      Yes.

Prosecutor:      And where is it on your body that he touched you?

A.G.:      In the butt.

Prosecutor:      In the butt.  And do you remember what he touched you with?

A.G.:      With his thing.

Prosecutor:      With his thing.  What is his thing used for?

A.G.:      To pee.

Prosecutor:      To pee.  And when he touched you on your butt with his thing, where were you?

A.G.:      Laying down in the living room.

. . . .

Prosecutor:      Were you laying on your stomach, your side or your back?

A.G.:      My stomach.

Prosecutor:      You were laying on your stomach.  And do you remember what you were wearing?

A.G.:      Shorts and underwear and a shirt.

Prosecutor:  You were wearing shorts, your underwear and a shirt.  And what happened to your clothes?

A.G.:  He took them off.

. . . .

Prosecutor:  Did he touch your butt on the inside or the outside or something else?

A.G.:  Inside.

. . . .

Prosecutor:  Did it feel anything else?  Did you feel anything else?

A.G.:  Disgusting.

. . . .

Prosecutor:  Did you ever change positions from laying on your stomach?

A.G.:  Yes.

Prosecutor:  You said yes.  How?

A.G.:  He picked me up.

Prosecutor:  What did he do—how did he pick you up?

A.G.:  By my sides.

Prosecutor:  By your sides.  Like where on your sides?  Up here, down here, or can you tell me where? Do you remember?

A.G.:  The hips.

. . . .

Prosecutor:  And what did he do?

12

A.G.:          I don't remember.

Prosecutor:    You don't remember.  But you remember him picking you up by the hips?

A.G.:          Yes.

Considering all of the above evidence in the light most favorable to the verdict, as we must, we conclude that the evidence is sufficient to support multiple separate and distinct sexual offenses committed against A.G.  To begin with, the forensic interviewer's testimony indicates that appellant penetrated A.G.'s anus and sexual organ during each encounter reported by A.G. Penetration of the anus constitutes a separate offense from penetration of the sexual organ, even if the two acts happened within a short period of time.  *See Aekins v. State*, 447 S.W.3d 270, 278 (Tex. Crim. App. 2014) ("A person who commits more than one sexual act against the same person may be convicted and punished for each separate and discrete act, even if those acts were committed in close temporal proximity.  The key is that one act ends before another act begins.  The defendant might touch a child's breast; then he touches her genitals.  Two separate acts, two separate impulses, two separate crimes."); *Gonzales v. State*, 304 S.W.3d 838, 849 (Tex. Crim. App. 2010) ("Penetration of the anus constitutes a discrete act from penetration of the sexual organ, even if they occur within a short period of time.  That both the anus and sexual organ may be anatomically located in the 'genital area' does not render the separate acts of penetration the 'same' offense for double-jeopardy purposes.").  Thus, the testimony of the forensic interviewer alone is sufficient to support a finding that at least six acts of penetration occurred, as she testified that A.G. told her that appellant penetrated her anus and her sexual organ during the first incident of sexual abuse before Christmas (two offenses), that he did the same things in an incident after Christmas (two more

13

offenses), that there were also times in between the first and last time, and that the other times "were the same as the first, that there was nothing different that happened during those other times" (at least two more offenses).²

In addition to the evidence of at least six acts of penetration, the transcript of appellant's second interrogation and the testimony of the detective regarding the interrogation constitute evidence of two acts of sexual contact because they show that appellant's penis touched A.G.'s sexual organ through clothing on one occasion and touched her anus through clothing on another occasion. *See* Tex. Penal Code § 21.11(c) ("sexual contact" includes touching through clothing).

When the evidence is sufficient to support penetration (and therefore aggravated sexual assault), the evidence is necessarily sufficient to support sexual contact (and therefore indecency with a child by contact), as indecency by contact is a lesser-included offense of aggravated sexual assault. *See Evans v. State*, 299 S.W.3d 138, 143 (Tex. Crim. App. 2009) ("[I]ndecency with a child is a lesser-included offense of aggravated sexual assault of a child when both offenses are predicated on the same act."); *Wasylina v. State*, 275 S.W.3d 908, 910 (Tex. Crim. App. 2009) ("If the State proves the charged offense, it necessarily proves all lesser-included offenses."). Accordingly, each of the acts of penetration necessarily provides evidence of an act of sexual contact.

---

² We note that the testimony of the doctor who examined and interviewed A.G. also suggests that at least four to six acts of penetration occurred. Appellant argues that the doctor's testimony about "at least two or three occasions" refers only to the number of times appellant babysat, not to the number of times he allegedly assaulted A.G. Because we will conclude that evidence other than the doctor's testimony supports all of appellant's convictions, we need not address this argument.

The jury convicted appellant of two counts of aggravated sexual assault of a child for causing A.G.'s sexual organ to contact his sexual organ and for penetrating A.G.'s anus. Setting aside the two convictions for aggravated sexual assault, we conclude that a rational jury could have found the essential elements of six other convictions for indecency with a child by contact (four based on penetration and two based on sexual contact without penetration) beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Temple*, 390 S.W.3d at 360. Because we conclude that there is sufficient evidence in the record to support six convictions for indecency with a child by contact, we necessarily conclude that the evidence is sufficient to support less than six.

Appellant argues that A.G.'s testimony renders the evidence insufficient because A.G. testified as to only one act of penetration. However, in addition to A.G.'s testimony about an occasion on which appellant penetrated her anus with his penis, she also testified that she did not necessarily remember all of the abuse that occurred, that she told the truth when she spoke to the forensic interviewer after her initial outcry, and that she found it difficult to talk about the abuse and did not want to talk about it. Specifically, she testified as follows:

Prosecutor: Is there anything else that you told [the forensic interviewer] that you haven't said here today?

A.G.: I don't know.

Prosecutor: You don't know. Is it possible that you might have told [her] something else than what you said here today?

A.G.: I don't know.

Prosecutor: You don't know. Now, you took an oath to tell the truth today. Have you done that?

15

A.G.:          Yes.

Prosecutor:    And so these are the things that you remember; is that right?

A.G.:          (Moving head up and down).

Prosecutor:    And some things that you don't remember; is that fair to say?

A.G.:          (Moving head up and down).

Prosecutor:    When you told [the forensic interviewer] what happened, were you telling her the truth?

A.G.:          Yes.

                              . . . .

Prosecutor:    Is this easy to talk about?

A.G.:          No.

Prosecutor:    No.  Do you want to talk about it?

A.G.:          (Moving head side to side).

The jury was able to consider A.G.'s demeanor and resolve conflicting testimony, and the jury could have rationally concluded that A.G.'s statements to the interviewer were more complete than her testimony at trial because she was uncomfortable testifying about all of the abuse at trial or because she could no longer remember all of it.  *See Jackson*, 443 U.S. at 319; *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015); *Isassi*, 330 S.W.3d at 638.  Further, in reviewing the sufficiency of the evidence, we must consider *all* of the evidence in the light most favorable to the verdict, not just one person's testimony.  *See Jackson*, 443 U.S. at 319; *Temple*, 390 S.W.3d at 360.

Because we conclude that the evidence is sufficient to support the jury's guilty verdict on three counts of indecency with a child by contact, we overrule appellant's three sufficiency challenges.

***Double Jeopardy***

In six issues, appellant contends that his convictions for indecency with a child by contact were subsumed by his convictions for aggravated sexual assault of a child and therefore violated the constitutional prohibition against double jeopardy. As an initial argument related to these issues, he also contends that "the State should be estopped from contesting [the double-jeopardy issues]" based on a statement made by the prosecutor at trial. We will address each of these arguments below.

### A. Initial Judicial-Estoppel Argument

Appellant's judicial-estoppel argument is based on a comment the prosecutor made while the parties and the trial judge were discussing the jury charge for the punishment phase of trial. The portion of the discussion to which appellant refers pertains to whether any of the indecency-by-contact convictions were subsumed by the aggravated-sexual-assault convictions. Defense counsel stated, "So it looks like the only thing that we would be sentencing him on, if I'm not mistaken, would be the two ag[gravated] sex[ual] assault cases. Am I correct?" The prosecutor then stated, "I think the other ones are subsumed," and the trial judge responded, "Well, I don't—I don't know that for sure." The parties and the trial judge continued discussing the issue briefly before adjourning for the day.

17

When the trial-court proceeding resumed the following day, defense counsel objected to the inclusion of the counts of indecency with a child by contact in the court's charge, and the prosecutor responded as follows: "[T]he State's response is that the evidence supports the inclusion of those counts in the verdict form and in the charge to the jury, and we'd ask the Court to leave in the counts of indecency with a child by contact."

We disagree that judicial estoppel is implicated by the prosecutor's earlier, informal comment. Judicial estoppel prohibits a party who has taken a position in an earlier proceeding from subsequently taking a contrary position. *Hall v. State*, 283 S.W.3d 137, 156 (Tex. App.—Austin 2009, pet. ref'd). The record shows that the prosecutor's comment about "think[ing] the other ones are subsumed" was made in the midst of an informal discussion with the trial judge and defense counsel and that later, when a draft of the jury charge had been prepared, the prosecutor responded to defense counsel's objection and affirmatively argued that the evidence supported the submission of the indecency convictions to the jury for punishment. Thus, the State is not taking a position inconsistent with the position it took in the trial court. Further, the cases cited by appellant are distinguishable from this case. *See Rock v. State*, No. 07-14-00003-CR, 2015 WL 1815071, at *2 (Tex. App.—Amarillo Apr. 21, 2015, pet. ref'd) (mem. op., not designated for publication) (appellant waived error regarding whether officer had probable cause to stop him because he agreed in trial court that officer had probable cause and did not adjudicate issue); *Ex parte Dangelo*, 339 S.W.3d 143, 153 (Tex. App.—Fort Worth 2010) (State's assertions on appeal that prosecution of further offenses was barred by double jeopardy and that appellant had no threat of future prosecution were deemed "binding concessions"), *aff'd*, 376 S.W.3d 776 (Tex. Crim. App. 2012);

18

*Davidson v. State*, 737 S.W.2d 942, 948 (Tex. App.—Amarillo 1987, pet. ref'd) (appellant estopped from arguing on appeal that State did not prove victim's cause of death where appellant's counsel stated on the record at trial that cause of death was not in dispute). Given the foregoing, we are not persuaded by appellant's argument.

### B.     Double-Jeopardy Challenges

We now turn to appellant's six double-jeopardy challenges. The double-jeopardy prohibition protects against (1) a second prosecution for the same offense after an acquittal, (2) a second prosecution for the same offense after a conviction, and (3) multiple punishments for the same offense. U.S. Const. amends. V, XIV; Tex. Const. art. I, § 14; *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *Lopez v. State*, 108 S.W.3d 293, 295–96 (Tex. Crim. App. 2003). Here, appellant's argument pertains to the third reason for the prohibition: multiple punishments resulting from a single prosecution. Specifically, appellant contends that his convictions for indecency with a child by contact were subsumed by his convictions for aggravated sexual assault of a child. He argues that he was therefore punished twice for the same offense in violation of the U.S. and Texas Constitutions.

In assessing whether appellant's convictions violated the prohibition against double jeopardy, we must consider whether the convictions are based on the same act or whether each violation is predicated on a separate act. *See Blockburger v. United States*, 284 U.S. 299, 301–03 (1932); *Maldonado v. State*, 461 S.W.3d 144, 149-50 (Tex. Crim. App. 2015); *Aekins*, 447 S.W.3d at 274; *Barnes v. State*, 165 S.W.3d 75, 88 (Tex. App.—Austin 2005, no pet.). "If the offense is a single continuous act, with a single impulse, in which several different statutory provisions are

19

necessarily violated along that continuum, the offenses merge together." *Aekins*, 447 S.W.3d at 275. For example, "penile contact with [the] mouth, genitals or anus in the course of penile penetration will be subsumed." *Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004). However, a person who commits more than one sexual act against the same victim may be convicted and punished for each separate act, even if the acts were committed "in close temporal proximity." *Loving v. State*, 401 S.W.3d 642, 650 (Tex. Crim. App. 2013) (Cochran, J., concurring); *Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999).

Given the record, we conclude that the aggravated sexual assault counts did not subsume the indecency counts because the indictment alleged, and the evidence supports, separate and distinct acts of sexual misconduct. The acts for which appellant was convicted were (1) causing A.G.'s sexual organ to contact his sexual organ (aggravated sexual assault of a child); (2) penetrating A.G.'s anus with his sexual organ (aggravated sexual assault of a child); (3) touching A.G.'s genitals (indecency with a child by contact); (4) touching A.G.'s anus (indecency with a child by contact); and (5) causing A.G. to touch his genitals (indecency with a child by contact). As we concluded above in our discussion of appellant's sufficiency challenges, the forensic interviewer's testimony alone supports a finding that appellant penetrated A.G.'s sexual organ and penetrated her anus on at least three occasions, thus constituting six separate and distinct acts of penetration. *See Aekins*, 447 S.W.3d at 278; *Gonzales*, 304 S.W.3d at 849. Further, the admissions made by appellant and the detective's testimony provided evidence of two more offenses of indecency with a child by contact. *See* Tex. Penal Code § 21.11.

Applying evidence of each separate act to the counts for which appellant was convicted shows that appellant's double-jeopardy claims must fail because there is evidence to support more offenses than the number of offenses for which appellant was convicted. Specifically, evidence of the first occasion of two types of penetration supports a conviction for the first and second counts listed above: causing A.G.'s sexual organ to contact appellant's sexual organ (by penetrating her sexual organ with his penis), and penetrating A.G.'s anus. *See id.* §§ 21.11, 22.021(a)(1)(B). Evidence of the second occasion of two types of penetration supports a conviction for the third and fourth acts: touching A.G.'s genitals (by penetrating her sexual organ with his penis), and touching her anus (by penetrating her anus with his penis). *See id.* §§ 21.11, 22.021(a)(1)(B). Evidence of the third occasion of two types of penetration supports a conviction for the fifth act: causing A.G. to touch his genitals (by penetrating her anus or her sexual organ with his penis). *See id.* §§ 21.11, 22.021(a)(1)(B). Thus, the record contains evidence of at least eight separate and distinct sexual offenses, and appellant was convicted of committing only five of them.

This is not a case where appellant was charged with and convicted of indecency by contact *and* aggravated sexual assault for *each* time the evidence showed he penetrated A.G.'s anus or sexual organ. If that had been the case, the aggravated-assault conviction would have subsumed the indecency-by-contact conviction. *See Patterson*, 152 S.W.3d at 92; *Barnes*, 165 S.W.3d at 88. Rather, appellant could have been charged with and convicted of *either* indecency by contact *or* aggravated sexual assault for each time the evidence showed he penetrated A.G.'s anus or sexual organ, and the evidence shows that he also could have been charged with and convicted of the two occasions in which, based on his own admissions, he had sexual contact with A.G.

Because the indictment alleged, and the evidence supported, separate and distinct acts of sexual misconduct, we conclude that none of appellant's convictions violates the prohibition against double jeopardy.[3]  *See Vick*, 991 S.W.2d at 833; *Rodriguez v. State*, No. 11-11-00046-CR, 2013 WL 616878, at *4 (Tex. App.—Eastland Feb. 14, 2013, no pet.) (mem. op., not designated for publication).  Accordingly, we overrule appellant's six double-jeopardy challenges.

## *Jury Charge*

In his tenth and eleventh issues, appellant asserts that the trial court erred in including one of the counts of indecency with a child by contact in the jury charge at both the guilt-innocence and punishment phases of trial.  The count at issue is count seven, which alleged that appellant engaged in sexual contact with A.G. by causing her to touch his genitals.  Appellant contends that the trial court erred in submitting the count to the jury because the count "was a lesser-included offense of that in Counts 1-6 [which are the other counts of indecency with a child by contact and the counts alleging aggravated sexual assault]" and because "[a]ll of the criminal conduct possibly shown by the evidence was covered by the charges on Counts 1-6."

In reviewing claims of jury-charge error, we first determine if there was error, and, if there was error, we then decide whether the error caused sufficient harm to warrant a reversal.

---

[3] Appellant employs the *Blockburger* test in his arguments on double jeopardy.  *See Blockburger v. United States*, 284 U.S. 299 (1932).  However, because we conclude that appellant was charged with and convicted of separate and distinct acts, our double-jeopardy analysis is complete, and we need not apply the *Blockburger* test.  *See Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999) ("Because the offenses at issue involve separate acts, we need not determine whether those offenses would be considered the 'same' under the *Blockburger* test because the precondition for employing the test (that the two offenses involve the same conduct) is absent.").

*Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Kuhn v. State*, 393 S.W.3d 519, 524 (Tex. App.—Austin 2013, pet. ref'd). The amount of harm necessary to warrant a reversal depends on whether the defendant objected to the jury charge. *Ngo*, 175 S.W.3d at 743; *Kuhn*, 393 S.W.3d at 524. A trial court must charge the jury fully and affirmatively on the law applicable to every issue raised by the evidence. *See* Tex. Code Crim. Proc. art. 36.14; *Whipple v. State*, 281 S.W.3d 482, 502 (Tex. App.—El Paso 2008, pet. ref'd); *Mullins v. State*, 173 S.W.3d 167, 178 (Tex. App.—Fort Worth 2005, no pet.) (mem. op.); *Taylor v. State*, 856 S.W.2d 459, 470 (Tex. App.—Houston [1st Dist.] 1993), *aff'd*, 885 S.W.2d 154 (Tex. Crim. App. 1994). If the trial court determines the evidence raises an issue and a charge on the issue is properly requested, then the trial court must give a charge on that issue. *Taylor*, 856 S.W.2d at 470-71; *Gilmore v. State*, 666 S.W.2d 136, 156 (Tex. App.—Amarillo 1983, pet. ref'd).

We have already concluded that there is evidence in the record supporting at least eight separate and distinct sexual offenses. In the jury charge in this case, the trial court submitted four counts of aggravated sexual assault of a child and three counts of indecency with a child by contact.[4] The trial court further instructed the jury that it should not consider the second count of aggravated sexual assault if it found appellant guilty of the first count and that it should not consider the fourth count of aggravated sexual assault if it found appellant guilty of the third count. Thus, the jury was authorized to convict appellant of no more than two counts of aggravated sexual assault. At least six separate and distinct offenses then remained for which there is evidence to support

---

[4] As we previously mentioned, the trial court also submitted three counts of indecency with a child by exposure, but the State waived the counts after the jury returned guilty verdicts on all of them.

convictions for indecency with a child by contact, as we discussed in detail above. Accordingly, the trial court did not err in submitting count seven as one of three counts of indecency with a child by contact. *See* Tex. Code Crim. Proc. art. 36.14; *Taylor*, 856 S.W.2d at 470. We therefore overrule appellant's tenth and eleventh issues.

### *Jury Argument*

In his twelfth and thirteenth issues, appellant contends that the trial court erred in sustaining the State's objections to two jury arguments defense counsel attempted to make during closing arguments. We review a trial court's ruling on the State's objection to appellant's jury argument under an abuse-of-discretion standard. *See Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010); *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004); *Thomas v. State*, No. 05-14-01589-CR, 2016 WL 259761, at *6 (Tex. App.—Dallas Jan. 21, 2016, pet. ref'd) (mem. op., not designated for publication). "The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court has broad discretion in controlling the scope of closing argument, but prohibiting counsel from making a particular jury argument constitutes a denial of the defendant's right to counsel when that argument is one the defendant is entitled to make. *Davis*, 329 S.W.3d at 825; *Johnson v. State*, 698 S.W.2d 154, 166 (Tex. Crim. App. 1985); *Riles v. State*, 595 S.W.2d 858, 861 (Tex. Crim. App. 1980); *Lemos v. State*, 130 S.W.3d 888, 892 (Tex. App.—El Paso 2004, no pet.).

The first jury argument at issue involved appellant's level of education, training, and experience as compared to that of the detective who interrogated him. The exchange among the attorneys and the court occurred as follows:

Defense:     The Reid technique is designed for one purpose and one purpose only, and that is to elicit a confession regardless of the facts of the case. And you can tell because he right away lies to him about DNA. He gives him this ridiculous answer, well, you know, that pen that you signed, like the pen that Mr. Moore is writing with, I took it back there and they analyzed it for DNA.

And he says, well, I don't really know how long it takes to analyze DNA. For one, I think he's lying about that. He must know. He has to submit DNA all the darn time in cases he collects, so he's lying again. But I'll give him the benefit of the doubt and say he didn't know.

But he doesn't know, and he expects a man of a modest education, with less training and experience than him, certainly—

State:     Objection. There's no evidence of that in this trial.

Defense:     It's obvious. It speaks for itself.

. . . .

Court:     What is the statement at issue?

State:     He's talking about [appellant's], I guess, lack of education or something of that nature, and I'm just saying there's no evidence of that in this trial at all. He is talking about [appellant's] background.

Court:     I'll sustain the objection of the State. I'll instruct the jury to disregard the last remark of defense counsel.

The second jury argument at issue involved the technique the detective used to interrogate appellant. The exchange among the attorneys and court occurred as follows:

25

Defense: Well, we have the Reid technique in full force now in the second interview. I mean, it is textbook. We know you did it, you know. We already know it happened. We already know it happened. We already know it's you. We don't have any other thing to talk about other than just tell us why you did it, just tell us why you did it. All the evidence says you did it. [Appellant] finally talks about [A.G.] coming to his room, but he says he never sexually assaulted her.

Here's what we talked about all the way in voir dire. Remember we talked about why would somebody confess to something that they didn't do, why would somebody say something to incriminate themselves when they didn't do it. Why would they?

I told you then that I didn't know the answer to that, but I think we see what the answer is, and it's there on my first—one of my PowerPoint slides at the beginning of voir dire. Police can lie, use techniques designed to elicit confessions, that they can rely on a technique that other countries don't allow to be employed.

State: Objection, Your Honor, I don't think there's any evidence of that. There was a question asked, but the answer was never given. There's no evidence that other countries made any decisions about this Reid technique.

Court: I'll sustain the objection.

The State concedes that the trial court erred in sustaining the State's objection to the second argument, as there was evidence in the record that other countries had stopped using the Reid technique, but contends that the trial court did not err in sustaining the State's objection to the first argument. Assuming, without deciding, that the trial court erred in sustaining the State's objections to both arguments, we must determine whether the error was harmful. *See* Tex. R. App. P. 44.2(a). Denial of the right to counsel is an error of constitutional magnitude. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10; *United States v. DeLoach*, 504 F.2d 185, 189–90 (D.C. Cir. 1974)

26

(restrictions on defendant's closing argument violated constitutional right to counsel); *Wilson v. State*, 473 S.W.3d 889, 902 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). Because any error by the trial court in sustaining the State's objections would be constitutional, we apply rule 44.2(a) of the Texas Rules of Appellate Procedure, and we must determine whether the trial court's actions were harmless beyond a reasonable doubt. *See* Tex. R. App. P. 44.2(a); *Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997); *Roop v. State*, 484 S.W.3d 594, 602 (Tex. App.—Austin 2016, pet. ref'd). In applying the "harmless error" test, the primary question is whether there is a "reasonable possibility" that the error might have contributed to the conviction. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

We must calculate as much as possible the probable impact of the error on the jury in light of the existence of other evidence. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000); *Miles v. State*, 918 S.W.2d 511, 517 (Tex. Crim. App. 1996). We consider the nature of the error, the extent to which it was emphasized by the State, its probable collateral implications, the weight a juror would likely place on the error, and any other considerations that may logically inform our analysis. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011). This requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not "in the light most favorable to the prosecution." *Wilson*, 473 S.W.3d at 902. If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error was not harmless beyond a reasonable doubt. *Wesbrook*, 29 S.W.3d at 119. The presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless error. *Id.*; *Moreno v. State*, 858 S.W.2d 453, 466 (Tex. Crim. App. 1993). In conducting such a review, we must consider

27

the "totality of the circumstances" by examining the record as a whole. *See Miles v. State*, 204 S.W.3d 822, 828 (Tex. Crim. App. 2006).

The two jury arguments at issue here are arguments defense counsel made to the effect that appellant was less educated and had less training and experience than the detective who interrogated him and that other countries did not allow the use of the interrogation technique used by the detective in this case. Appellant contends on appeal that the trial court's rulings sustaining the State's objections to the arguments were harmful because appellant's "purported confession" provided "critical corroboration" of the State's case and that by sustaining the objections, the trial court undermined appellant's argument that his interrogation produced a false confession and also resulted in "the court put[ting] its imprimatur of approval on the State's false factual assertion and unfairly bolster[ing] the purported confession's validity."

We disagree that the trial court's rulings on the State's objection, if error, caused harm in this case. To begin with, appellant's contentions as to why the trial court's rulings caused harm primarily focus on the harm caused by the admission of evidence of appellant's *interrogation*, not the alleged harm caused by the trial court's rulings on appellant's jury argument. Appellant asserts that "[w]ithout appellant's statements, this was essentially a one witness case" and that "[t]he statements obtained from the interrogations . . . provided critical corroboration and fatally undermined the credibility of appellant's denials." However, the admission of evidence of the interrogation itself is not at issue.

To the extent that appellant argues that the trial court's rulings were harmful because they bolstered the validity of the interrogation, we are not persuaded. The arguments at issue were

28

only a small portion of an otherwise extensive argument about the invalidity of the interrogation technique used by the detective. Specifically, eight pages of the trial-court transcript are taken up with defense counsel's arguments about the detective's lack of credibility and the invalidity of the technique used by the detective. Among defense counsel's arguments were the following:

> So Detective Torres then employs the Reid technique. I spent a lot of time on the Reid technique. I didn't know much about it before this trial, to be quite honest with you. But let me tell you something about the Reid technique. Make no mistake, it is the modern day rack of our time. It is a way to get somebody to tell you something that they wouldn't otherwise confess, a way to get an innocent person to tell you something that you want to hear. It is no different than strapping somebody on a rack and stretching them until they tell you or confess to something you're accusing them of. The only difference is it's not a physical sort of manipulation or torture, it is a mental one.

> . . . .

> Then [the detective] starts to lie. I mean, he presses his lies. Tell me about your DNA. Why is your DNA present if it's not? Classic Reid technique, right, because he's making up facts that don't exist to see if he can get him.

> . . . .

> Is that a fair and accurate way to get reliable information from someone, you lie to them about facts that don't exist and then have them explain it to you? Well, the DNA is there. How do you know? Heck, he could have said my DNA was there. How in the heck did my DNA get there, assuming I don't know and I'm not sophisticated to know that you can't test a pen in five minutes or 10 minutes?

> . . . .

> Dr. Carter, their own expert, talks about the Reid technique and the dangers of the Reid technique. Lying to the accused about evidence or suggesting you know the accused is guilty will not lead to reliable statements. He said you can't trust it.

> . . . .

29

Then [the expert] said in one of my questions to him when I asked him about the mind being a tricky thing, he said if somebody is confronted with this kind of thing, they begin to feel trapped even if they're not in a cage or surrounded or otherwise repressed. You can feel trapped and you will say something to escape or to get it to stop. That's what he did.

With regard to the first argument at issue—appellant's alleged lack of education, training and experience as compared to the detective—appellant made a similar argument without objection in the above excerpt when defense counsel stated, "Heck, he could have said my DNA was there. How in the heck did my DNA get there, assuming I don't know and I'm not sophisticated to know that you can't test a pen in five minutes or 10 minutes?" Both the quoted argument and the argument at issue point out that the detective lied about having appellant's DNA and suggest that the detective took advantage of a person with less knowledge or sophistication than him. Thus, appellant was allowed to make the point he wanted to make. Further, appellant argued at trial and argues on appeal that his lack of education, training, and experience is evident from the record. Specifically, after the State objected to defense counsel's characterization of appellant, defense counsel argued, "It's obvious. It speaks for itself." On appeal, in asserting that the trial court erred in sustaining the State's objection, appellant contends that "[i]t is obvious from the record appellant had neither college [n]or any relevant specialized training or knowledge. The evidence showed appellant was about 42 years old, had come to this country from Mexico, and worked construction his entire life." A review of the record confirms that evidence of appellant's general background was admitted at trial. In addition, as detailed in earlier issues above, the record contains extensive evidence to support appellant's convictions, including testimony from A.G. and the forensic interviewer.

Given appellant's lengthy critique without objection of the detective's interrogation technique, including a critique of the detective taking advantage of a less-knowledgeable suspect, the other evidence of appellant's background admitted without objection, and the considerable evidence of appellant's guilt of the offenses for which he was convicted, we conclude beyond a reasonable doubt that the trial court's ruling sustaining the State's objection and instructing the jury to disregard defense counsel's argument about appellant's lack of education, training, and experience, if error, was not harmful. *See Wesbrook*, 29 S.W.3d at 119 (presence of overwhelming evidence supporting finding in question can be factor in evaluation of harmless error); *Foreman v. State*, No. 08-13-00042-CR, 2015 WL 129025, at \*5 (Tex. App.—El Paso Jan. 9, 2015, no pet.) (not designated for publication) (prosecutor's argument to jury was harmless where prosecutor made similar argument later in closing arguments with no objection); *Culton v. State*, 95 S.W.3d 401, 406-07 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (error in sustaining State's objection to appellant's closing argument was cured because appellant made essentially same argument later without objection).

Regarding the second argument at issue—the argument that other countries did not allow the use of the interrogation technique used by the detective in this case—we note at the outset that the trial court did not instruct the jury to disregard the argument. Thus, the jury heard the argument and was allowed to take it into consideration. Further, the record shows that a psychologist who testified for the State testified affirmatively as to the substance of the argument without objection during trial. Specifically, the following exchange occurred:

31

Defense: In fact, we're learning quite a bit about police interrogation techniques and whether—and the production of false confessions. In fact, other countries have even stopped using one of the more popular techniques in the United States called the Reid technique; is that correct?

Psychologist: Yes.

Defense: Finding that often the rates of a false confession are pretty high when you use that technique, right?

Psychologist: Yes.

In addition, defense counsel provided a lengthy critique of the Reid technique without objection as set forth in excerpts above, thus presenting considerable other arguments about the unreliability of the technique. We also note once again that the record contains extensive evidence supporting appellant's convictions as set forth in earlier issues above.

Considering that the trial court did not instruct the jury to disregard the argument, that the psychologist testified affirmatively elsewhere without objection to the substance of argument, that the defense argued extensively elsewhere without objection about problems with the interrogation technique used by the detective, and that there was considerable evidence of appellant's guilt of the offenses for which he was convicted, we conclude beyond a reasonable doubt that the trial court's ruling sustaining the State's objection to the second jury argument at issue, if error, was not harmful. *Cf. Wesbrook*, 29 S.W.3d at 119; *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) ("[T]he admission of [one witness's] testimony without objection rendered the admission of [a second witness's] testimony harmless because it established substantially the same evidence."); *Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) ("Inadmissible evidence can be

32

rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove.").

Because we conclude that the trial court's rulings sustaining the State's objections, if error, were harmless, we overrule appellant's twelfth and thirteenth issues.

## CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgments of conviction.

_____
Cindy Olson Bourland, Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Affirmed

Filed:   September 16, 2016

Do Not Publish